First case this morning is in re Marriage of Ekiss. For the appellant, Mr. Tye, and for the appellant, Mr. Rathbun. Good morning, your honors. As you know, my name is Tim Tye. I represent the petulant respondent in this case. I'd like to start today talking about the maintenance award that happened in this case. During the pendency of this divorce, my client, Mr. Ekiss, kept very good track and records of the money that he was spending to provide support for his wife, Carol. That was introduced to the trial as an exhibit. I believe it was Exhibit 6. It's also attached to the appendix. And it basically shows that during this period of time, my client, Mr. Ekiss, kept a record of the money that he was spending to provide support for his wife, Carol. That was introduced to the trial as an exhibit. And it basically shows that during this period  support for his wife, Carol. My client, Mr. Brinkhager, during cross-examination of Mrs. Ekiss, got her to concede that the amount of support she was getting during the pendency of the divorce allowed her to maintain the same lifestyle she had become accustomed to during the marriage. Then Mr. Rathbun tried to rehabilitate that testimony, and I've attached parts of that to the appendix. And it starts on page A30, which is page 30 of the appendix. And I'd just like to read it. And this is a question from Mr. Rathbun to Mrs. Ekiss. Looking again at your financial affidavit, and particularly paragraph number 5, you have listed $2,046 a month in expenses. Answer, yes. Question. And I think you told me that this is not equivalent to the kind of And then I think you told Mr. Brinkhager, my client's trial counsel, that it does afford you that same lifestyle. Is there some confusion here? Answer, I am confused, yes. And then Mr. Rathbun goes on. The only thing he can get her to say that she can't buy or live the same way she could before is clothes. She can't buy clothes like she used to. That's all he can get from her. That's the only difference. So I would submit to your honors that the evidence showed Well, I thought that it also showed that she listed, you know, that affidavit listed nothing for gas and oil and repairs, nothing for real estate taxes, nothing for any entertainment, nothing for gifts to the children, which apparently would have been okay, I suppose. I mean, those are missing as well. Those are I can say that I believe the evidence showed that she did buy those things with a credit card, which my client then paid for. And it averaged about $2,000 a month is what he gave her extra money to spend on things like that. And I would submit that that's what the evidence showed, is that $2,000 a month plus the income that she made on her own with her job was her lifestyle. She was doing just fine. I wasn't there, but as I read her testimony, and I know it's just a cold record, but I kind of got the sense that she was actually proud of herself for the fact that she'd been able to get along just fine without it. So the evidence shows $2,000 is the amount she needs to maintain a custom standard of living. The law says that's the standard. That's what you award. Well, the trial judge gave her $3,000. If you would ask my client's trial counsel, he'd tell you that the judge just split the difference. My client was suggesting $2,000 was appropriate. Mrs. Ekes was saying $4,000 was appropriate, and the judge picked $3,000. The judge denied that she just split the difference. That's a motion to reconsider. But the judge did give some justifications for her award of this extra $1,000, and I would submit to your honors that her justifications were outside of her discretion, that she could not base an extra award of maintenance on the factors that she did. And the two specifically were, one, the adult child support. She said, I'm giving Mrs. Ekes more money because she's got an adult child living there, and that's just not a valid basis for a we asked for adult child support or post-secondary support or anything like that. It just wasn't before the court. It wasn't a proper basis for awarding payments. The next one was the girlfriend. At the time, during the pendency of the divorce, my client had moved his girlfriend in, and he apparently spent more money than Mrs. Ekes did. And the judge clearly thought he was spending money on his girlfriend and that he could afford to give more to his ex-wife. Marital misconduct, alleged or not, is specifically not something that can be considered when setting maintenance awards. Where in the order do you find that there's, or the judge is ruling that she's fault, she's considering fault, or is she just considering that there's another person living with him that contributes, either contributes to the expenses or the Having a roommate is something that he's voluntarily spending. I mean, I don't, I don't, neither of us were in the courtroom. I don't get the tone that he's saying that it's a bad thing that you have a girlfriend. Well, it is a cold record, Your Honor, and perhaps I'm reading between the lines a little bit, but page, it's in the appendix A14. In the middle of the page there's a comment. It starts at the top. In light of Mark's testimony that he has a girlfriend living with him who contributes to his expenses, the court found his monthly expenses to be unreasonably high based on that contribution. And that goes to your point. I understand that. Then it goes on to say, either Mark is living at a much higher standard of living than Carol or his expenses are inflated. And that, to me, that raises the question, well, what if he is living at a higher standard? What if that's the way they've always lived? Why is that a basis for deviating from the law that says it should be based on standard during the marriage? And then at the bottom, when she goes, after the judge goes through her calculations, she says, this takes into consideration the contribution to expenses from his girlfriend or a reduction in his monthly expenses based on the fact that some of those expenses are incurred for her benefit. And I read that as she's not counting some of his expenses because he's spending it for the benefit of his girlfriend. Well, counsel, I understand that you're picking apart the rationale that the trial court used to grant a greater share of maintenance. But if you step back from all the little facts that are in this case, you've got one party who's making between $130,000, $140,000 a year, and another party who's making about $20,000 a year. Now, how can you say it's an abuse of discretion to say that $36,000 a year maintenance is unreasonable? Well, I have a response to that, Your Honor. One of the cases I cited in my brief was In re of the marriage of Magnuson. And that was a case that discussed that if the spouse, the wife in both those cases, has the ability to make more money and can get a job and can work, that has to be calculated into the maintenance award. You figure out what she could earn, and then you give her the difference between what she needs. There was testimony at trial in this case that Mrs. Eckes was offered a promotion, and she turned it down because she didn't want the extra stress. She could make more money. She has the ability to make more money. That is something that the law specifically says has to be considered, is that this little extra difference could be made up by her. It doesn't justify that the court apparently didn't consider that, because they gave her the extra money anyway. So that, I think, well, I would submit to Your Honors. The evidence is that $2,000 is what the award should have been. The judge wanted to give the petitioner more. The judge used reasons that just aren't allowed to try to get there, and I would submit that's an abuse of discretion because she was acting outside of the parameters of what the law lets her consider when making maintenance. So that's maintenance. I think it should be reduced to $2,000 because that's what it should be. The next point I'd like to talk about is the property settlement, and specifically, this is my client's non-marital house. When I got this case, obviously, I wasn't in the trial. I read the record, and I looked at all this, and I said, wow, I don't know how that happened. But somehow, the trial court decided that he had gifted for free, without consideration, $142,000 worth of free and clear property to his ex-wife without any expectations of consideration. And the record doesn't support that finding. That finding is against the manifest way of the evidence. For the court to say he essentially gifted it isn't right. There's testimony that the suggestion that this property be transferred to Mississippi was premised on specific consideration, that specific consideration being that her marital interest and his separation benefit go to And really, it's such a good way to resolve this issue with the separation benefit. It's elegant in its simplicity. I don't know why the judge didn't understand that. This separation benefit is very complicated. How much it pays depends on when he retires and how much he's making his last year. It could be an annuity for life, or it could be, I think, paid over five years. It's just a real mess to calculate. And here you've got this piece of free and clear property that she's already living in, so she won't even have to move. Just swap them. It's perfect. And it didn't happen, and I don't know why that didn't happen, but it was his non-marital property. The court found that. That's not been challenged on appeal. The judge didn't have discretion to award non-marital property to the other party. You just can't do that. So that was an error, and we've asked for a couple of different things. And the alternative, one, you could say, okay, she can keep the house, but he gets the full separation benefit. That's better for her, but she doesn't have the benefit she has now, but having the house is better than having half the separation benefit. Or, and the alternative, if you don't think that's proper, if this really isn't the ideal case for immediate offset, then he'll just take his house back, because it was his house and the judge didn't have the authority to give it away for him. Why isn't this invited error that you are prohibited from arguing to us on Well, Your Honor, I anticipated that question, and if I were on the other side, that's exactly what I would be arguing. And my response is that there is testimony in the record that specifically says that this is, the consideration for this proposal was he getting the full interest in the separation benefit. So it's right there. I mean, it's on black and white. I can't add to the record. I can't detract from it. It's just there. What about the attorney's concession? Well, I think Mr. Brinkhotter got very frustrated with this case, and So therefore what? Well, I don't, I'm not going to concede anything on his behalf, and I'm not You haven't answered my question. Why isn't this invited error? Well, I would, because the record shows that there was a specific consideration considered and proposed. No, that's, I didn't ask you about the record. I'm asking about the position of counsel before the court, as Justice Connect asked. You mean the trial counsel? Yes. Why isn't this, why, if this is an error, why is it an error induced by trial counsel of the trial court based upon what counsel said at the hearing? Well, is there a specific comment by trial counsel where he said we're just going to give this away for free and not expect anything in return? Well, he said he really didn't think that 112 West Oak Lane should play into this thing at all, and the respondent had designated this to be awarded to petitioner. That's a quote, and that's not based on an original argument to the court. You know, this was court claimed, and I don't recall at the moment whether it was in final argument or on motion to reconsider. Let me explain. If this panel has got about 40 years' experience as a trial judge, we've been there, and when in proceedings like this, counsel concedes something to the court, I'm not going to check the record and say, well, counsel, you sure you want to do that? Because I notice there's an exhibit here or some other evidence that suggests maybe that isn't correct. It seems to be what you're asking us or asking the trial judge to do and asking us to find error, because the trial judge didn't do it. If I remember correctly, the context of your quote was that a motion to reconsider, because you mentioned something about a quick claim deed. The only time a quick claim deed was ever mentioned was that argument on the motion to reconsider, and the quick claim deed, whatever it is, I don't know what it is, because it was never introduced into evidence and never made it into the record. Well, Brinkhotter conceded. He said, just assume that, rather than going through the pointless formality of putting it in the app. That happened. There was a quick claim deed. I can't respond to this. I don't know what it is. Well, I don't either, but that was the concession by counsel that it maybe that wasn't going into. He concedes that it happened, and then it's like, do I have to prove that up, or am I willing to concede it? He says, stop conceding. Then let's go with that, and the judge heard that, and it still did not change the judge's finding. But then he said, do you want me to reclassify this? And he says, no, I don't really care. It doesn't matter. Leave it the way it is as far as I'm concerned. What is the trial court supposed to do? Well, the trial court didn't change her determination that it was my client's non-meritable property. Well, but the judge asks, do you want me to reclassify this? So is the error in the trial court's part to accept these representations and not to say, oh, I'm sorry, counsel, you must be mistaken? That's the error that we're supposed to reverse? Well, I'm not sure. I will answer that, but going back to Justice Connick, it would not have been in my client's interest to reclassify this as meritable property, because that's what the judge was asking him. Do you want me to call this meritable property now? And he said, no, it's my non-meritable property. Well, at first he said no. Then he said he didn't care. You can just leave it the way it is as far as I'm concerned. That may have expressed a certain amount of frustration, but. He had become frustrated at that point. And, Justice Steinman, I think your question was, the error that I think the judge made was that she made a finding of fact that my client had essentially gifted this property. And I don't think that finding is supported by the record, because the record shows that the suggestion that there be a transfer was specifically offset with the consideration of this separation benefit. And I don't know if the judge wasn't paying attention when that was said, or the trial transcript shows that after the trial she was asked when the order might be entered, and her answer was basically, I'm leaving for a vacation tomorrow, and I'll get to it when I get to it. So maybe it wasn't fresh in her memory. I don't know. But the finding that he essentially gifted this property just isn't supported by the facts of the record. Well, how about giving her a quick claim deed to it a decade before the hearing? Well. What does that mean? I don't know what it means, because it wasn't introduced into evidence. It's not part of the record, and it didn't change the judge's finding that it was still all his marital property, and nobody's challenging the finding that it was his non-marital property. I don't think it means anything. Your Honors, I see my time is about up. I will address you again on repeat. Thank you. You'll have that chance. Mr. Rafferty? Thank you. Please support the counsel. I'm somewhat moved this morning. You mentioned 40 years of experience. I will have been sworn in 41 years this Friday and facing, hopefully, in the next year or so my retirement. This is a painful situation for me to be in, in view of the arguments that have been made in the briefs and at the date before this court. I have to acknowledge first that there's a typographical error on page 13 of my appellee's brief in referring to the deed as having been granted in 2013. I meant to say 2003. In fact, I have to confess that upon further review, the deed actually was dated and delivered in February 2001. I regret to say I relied on Mr. Brinkhotter's statements during the argument on the motion to reconsider, and so now I'm in a position of having to admit to a typographical error and a careless error. But the fact is I stand here admitting these errors while counsel, both Mr. Brinkhotter and Mr. Tide, come before this court and just plain misrepresent the facts. And this is, as I say, painful for me to have to point this out. In the motion to reconsider, page C100 of the common law record, Mr. Brinkhotter stated that he had conferred jurisdiction on the trial judge to award this property to Carol by offering it to her. He stated on that same page in the same motion that Mark had made a gift of this property to Carol. Now they're in this court in a 13-page brief. On 10 pages they say this was non-marital property. Mr. Brinkhotter acknowledged three different times during his argument on the motion to reconsider that it wasn't non-marital property. When I pointed it out to Mr. Brinkhotter, having received his motion to reconsider, whether he based his recantation, if that's the word, on Rule of Professional Conduct 3.3A1, which is to say that an attorney can't misrepresent facts to the court and has an obligation to set the record straight. I don't know if that's what led him to do that, but that's gone out the window with these fellas in this appeal. They have an obligation, to be honest with you, and yet they're saying non-marital, non-marital, non-marital.  The condition being, if you read the record, he would like for the judge to consider an offset. That's not a conditional offer. He offered the property to her. She accepted it. Long afterwards, in the time of the trial, he comes up with this request. And yet they persist in saying that he specifically stated this was part of his proposal. That's not what he said. And they can't show you or cite you where he said that. They're having Benedict, and I'm stressed to hear counsel say he doesn't know what the deed says. He has an obligation to look at that deed. His co-counsel in this court obviously has seen it. He said, I don't know what it says, so I'm going to ignore it. Can't do that. They're having Benedict under Section 503D1 of the Act, having been transferred into co-ownership of that property as presumed marital, even if Mr. Brinkhardt hadn't acknowledged that it was. So the fact of the matter is that we have jurisdiction in the circuit court, as you all acknowledge, as Mr. Tye can't contradict, jurisdiction to make this award to Carol. She called it non-marital. Mr. Brinkhardt said he didn't care, having acknowledged twice previously that it was actually non-marital property. But she made this award. I think we have to look at this in context. In his initial brief in this court, Mr. Tye stated, and he referred to this then in the reply, that this award of property was part of a 5842 division of marital estate in favor of Carol. I didn't know where he found that. I made mention of it in our argument. And he said, well, it was in the Memorandum of Judgment of Dissolution of Marriage that Judge McCarthy filed on June 21st of last year. That number does appear there, or those numbers. I think she said 58%, 42%. But if you look at it, first you see that that's not the award she ultimately made. Following reconsideration, she took out of the equation the $121,800 in commissions  that I thought would be received by Mark during the last seven months of last year. So those numbers are out. Additionally, this residence, the Oak Lane residence, at a value of $142,000 was included among property Carol would be getting. If you look further, you'll see that the judge purported to award to Carol, as part of the marital property, $60,000 in her IRA, which was almost 90% non-marital. The judge found it to be 10.2% marital. Gave Mark half of that, excuse me, roughly $100,000, and gave the rest to Carol as marital. And that's how she got up to where Carol supposedly was getting more than half the property. I think if you straighten those things out, it's more like 45 to Carol, 55 to Mark. But we've made some points in our brief basically just to make the Court aware that Mark didn't really get the short end of the stick here. Carol didn't want to appeal. She's not that kind of person. But there were a lot of things that Carol could have questioned and didn't. So it's not like there was only one possible mistake here, and it marks entitled relief. As far as the maintenance is concerned, Mark can't put Carol on a budget. For the last 15 months of their marriage, while they're separated, while the case is pending, say that's all she needs. This was a 20-year marriage. They owned five houses, two vacant lots, nine cars, retirement assets. He had bought $50,000 or $60,000 worth of collectibles during the marriage, according to her testimony. And under the Dunlap case, and I can't say anything about the law, but under Dunlap, what you do is look at their incomes. In fact, 2012, Mark's income was $160,000. But his financial affidavit, he says his net business income before his personal taxes was $13,300 a month. So he's making... What is his business? Pardon me? What is his business? It's an insurance agency. And in fact, it's a marital agency. And in fact, Carol... What agency? Marital. Carol got nothing for that until he retires and draws a separation benefit. So he walked away with this vehicle that earns him $140,000, $150,000, $160,000 a year. So in terms of the maintenance, $185,000 a year in income. After the maintenance, she's got about $55,000, $56,000. He's got $125,000. I don't see any error there. Questions? There don't appear to be any. Thank you. Rebuttal? Thank you, Your Honor. Well, a brief reply. I would say that the trial judge did do... She did work very hard to make everything look 50-50 on paper. When you go through her numbers and her order, she's got roughly equal splits of marital property and roughly equal take-home income at the end of the month. My point, though, is that that's not what the law says. The law says maintenance is based on the standard of living. And this happens to be a case where parties have different standards of living. I'm not aware of a law that says it has to be 50-50. I think it's probably... Well, certainly. In most cases, there isn't enough money to go around so that both parties can maintain the same standard of living when they get divorced because now they've got to support two houses and two cars, whereas before they were two people working together. So this is kind of an unusual case. It doesn't happen very often. And I can understand why, as a practical matter, in 99% of cases, what you do is just split it 50-50, and that's the best you can do because you can't get both parties back to their standard of living. This is not that case. This is a case where evidence was presented that showed $2,000 a month on top of what she made, and if you also factor she could have taken a raise but didn't, and she's going to own rental property that's going to produce income. And she said this was enough. I'm living the same way I did. That's my reply to that. As far as the quick claim, yes, sir? There's a quote in the record that says, I'm living the same way now as I did when I was married. You said Mr. Rathbun tried to rehabilitate her. Well, didn't he go through her affidavit with her and listing the things that she hadn't included, including the business about this place needs a new roof, and if it gets a new roof, I'm not going to have enough money to buy health insurance for a year and a half? He did go through that. Does it have any meaning? Or do we just forget that because there was an earlier statement that said, yeah, I got by on $2,000 a month. Well, the meaning I got when I read that particular testimony was that all these things she was getting paid, that she had a credit card and she bought things. She didn't understand. I don't think she really appreciated the fact that her insurance bills and utility bills and these credit card bills weren't just getting paid by themselves. I don't think she realized that her husband was the one making all these payments. And she was still spending those things. Who do you think she thought was making the payments? I don't know who she thought. Because when you read her testimony... So it was just the credit card theory? Is that the suggestion here? Well, again, you can read the testimony for yourself, but when I read it, the impression I got, she's asked, well, who pays for that? She didn't know. And then again, a quick one. It's not in the record. So I can't respond to that. The judge apparently saw it, knew about it, and it didn't change her mind that this was non-marital property. Thank you, Your Honor. Thank you. We'll take this matter under advisement. Stand in recess for a few moments.